(63 Misc. Rep. 450.)

## GARRETT v. COHEN.

(Supreme Court, Special Term, New York County.   May 27, 1909.)

**1.** EVIDENCE (§ 441*)—WRITTEN CONTRACT—PAROL EVIDENCE.

Any oral agreement as to the time when a contract for the sale of land was to be closed by a conveyance was merged in a subsequent written agreement between the parties, providing that it should be closed on a certain date.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441.*]

**2.** CONTRACTS (§ 211*)—OPERATION—TIME—TIME AS ESSENCE.

While, as a general rule, time is not of the essence of the contract in equity, unless the parties treated it so, where the contract is of such a nature that to leave one of the parties in doubt or uncertainty for any period of time would cause anxiety or detriment, or if the thing contracted for fluctuates in value, the other party will be required to perform on the day specified.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 938–943; Dec. Dig. § 211.*]

**3.** VENDOR AND PURCHASER (§ 78*)—PERFORMANCE OF CONTRACT—TIME—TIME OF ESSENCE.

Where the seller knew when he contracted to convey lots on a certain date that the purchaser was buying the lots to build on, and was anxious to commence operations, because the building season was advancing, and every day's delay in beginning caused him loss, the time of performance was of the essence of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. § 78.*]

**4.** VENDOR AND PURCHASER (§ 341*)—REMEDIES OF PURCHASER—RECOVERY OF DEPOSIT—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action to recover a part of the purchase price of a lot deposited with the vendor, upon his failure to perfect title so as to enable him to convey, evidence *held* to show that the purchaser treated the time of conveyance provided in the contract as of the essence, and rescinded the contract, and demanded the return of the deposit, when he learned that the seller did not know when he could convey.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 341.*]

**5.** VENDOR AND PURCHASER (§ 114*)—PERFORMANCE—WAIVER OF DELAY.

Where the vendor agreed to convey on a certain date, knowing that the purchaser intended to build on the lots, and desired to begin as soon as possible, before the building season advanced, the latter's consent to wait a few days or a week after the time of conveyance to enable the vendor to complete his title did not estop him from insisting that time was of the essence and rescinding the contract for failure to convey; the consent being a mere indulgence to the vendor, especially where the vendor subsequently sold the land for the same price.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 202–204; Dec. Dig. § 114.*]

**6.** VENDOR AND PURCHASER (§ 341*)—REMEDIES OF PURCHASER—ACTION FOR PURCHASE MONEY—SUFFICIENCY OF EVIDENCE.

In an action by the purchaser of lots to recover a deposit on the vendor's failure to convey at the stipulated time, the purchaser's purchase of another tract in the same locality for building purposes, shortly after

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rescinding his contract with defendant, *held* to show that his purchase of the lots from defendant was made in good faith for the same purpose.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 341.*]

7. VENDOR AND PURCHASER (§ 337*)—REMEDIES OF PURCHASER—RESCISSION—LIEN FOR MONEY PAID.

Where the purchaser of lots rescinded his contract, and sued to recover a deposit made with the vendor, he was not entitled to a lien on the lots for the purchase money deposited, being only entitled to recover the deposit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 985–990; Dec. Dig. § 337.*]

8. JUDGMENT (§ 252*)—RELIEF—CONFORMITY TO PLEADINGS.

Under Code Civ. Proc. § 1207, authorizing the court to permit plaintiff to take any judgment authorized by the complaint and within the issues, that the purchaser in an action to recover purchase money paid on rescinding the contract also prayed a lien upon the land, to which he was not entitled, did not prevent him from recovering the purchase money; an answer being interposed to the complaint.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 441, 442; Dec. Dig. § 252.*]

Action by William Garrett against Louis Cohen, to recover deposit paid on signing a contract for the purchase of lands and to establish a lien therefor. Judgment in part for plaintiff.

Arthur H. Wadick, for plaintiff.
Maurice Deiches, for defendant.

GIEGERICH, J. The action is to recover $500, the amount of the deposit paid upon the purchase of certain vacant lots situate on East 228th street, in the borough of the Bronx, city of New York, and interest at the rate of 4 per cent. from February 28, 1908, and to establish and enforce a lien therefor. The contract in suit was entered into on February 28, 1908, and, according to its terms, was to be closed on April 28, 1908, 60 days thereafter, at which time the defendant was to deliver a deed to the property and to pay the balance of the purchase price in the manner provided by the contract. It appears that when the contract was made the defendant was not the owner of record of the property, and that in order for him to complete his title legal proceedings were necessary to acquire the interests of certain infants. The plaintiff admits that he knew this at the time of entering into the contract. There is some dispute as to what was said in regard to the probable time which would be required to complete these proceedings; but it is not material to determine the point, because, whatever was said, it was merged in the written contract, whereby the defendant agreed to give title on a fixed date, namely, April 28th. However, in view of this uncertainty, the following clause was put in the contract to safeguard the defendant:

"It is understood and agreed by and between the parties hereto that the party of the first part [the defendant] has merely a contract for the prospective purchase of said premises, and, should the title to the same prove unmarketable for reasons not caused by his own acts, then this contract shall be null and void, and these premises to be of no force and effect upon the

party of the first part paying to the party of the second part [the plaintiff] the said sum of five hundred ($500.00) dollars, together with the interest at the rate of four (4) per cent. per annum, and that thereupon each one shall release the other from any and further liability."

The testimony of the plaintiff is to the effect that on the day fixed for closing the title, viz., April 28th, he went with Mr. Behrman, the broker who negotiated the sale of the property, to the office of the defendant; that Mr. Behrman told him not to bring the money; that if the defendant was ready they could go back to Mt. Vernon and get the money at the bank, and that he (Mr. Behrman) did not know whether the defendant was ready; that when they arrived at the defendant's office the latter said "he hadn't the property cleared and he could not deliver the property that day." When asked how long it would take, he replied about three or four days or a week. The subsequent occurrences are shown in the following testimony:

"Q. Then what happened? A. I went away, and I came back about a week after. He could not give me the property then. He said it would take a few more days to get it ready. And I went back on the 21st of May, and he told me that he did not know when he could give me the property. 'But,' he said, 'Mr. Garrett, if you want your money, you can have it.' I said, 'Well, I want my money.' 'Well, I cannot give it to you in five minutes,' he said. 'Well, when will you give it to me?' 'Well,' he said, 'when I get this property clear, and take up a mortgage,' he can give me the money. I said the deal was up; that I wanted my money. * * * Q. What did you say about that; about the deal being off? A. I told him the deal was off, and I didn't want the property. I could not wait any longer. Q. What did he say then? Well, he said, 'Do what you please.' 'Well,' I said, 'I will see my attorney about it.' He said, 'All you can do is to put a lis pendens on the property.'"

The testimony of the defendant as to what was said at the time fixed for closing the title, viz., April 28th, differs in some respects from that of the plaintiff. He says he told the plaintiff that he was not ready to deliver title, and offered to give him his money back, with interest. "He said, 'Mr. Cohen, I don't want my money back. I know I have a bargain, and I want to hold onto the property.'" His version of the last conversation between the parties, which he says took place on May 25th, is as follows:

"He came down to my office—that morning it must have been about 9 o'clock I got down—and I found him waiting for me, and he said: 'Mr. Cohen, I want the property.' I said: 'Mr. Garrett, I cannot let you have the property now. I offered you the money back, away back in April, and you refused to take it. I could have sold that property at an advance then. Now, when I have the proceedings almost entirely completed, you ask me for the money back.' * * * I told him at that time the referee's report had already been filed, and he said: 'No; I don't care anything for that. I am going to file a lis pendens.'"

Shortly after this last conversation the plaintiff started this action, and thereafter, on the 11th day of June, 1908, the defendant wrote to him, informing him that the deed was ready for delivery, to which letter the plaintiff's attorney replied, declining the title, and informing the defendant that the plaintiff had elected to rescind the contract.

The defendant insists that since this is an equitable action, in which equitable defenses are set up, time is not of the essence of the contract. In Gerard on Titles to Real Estate (5th Ed., as Revised and Enlarg-

ed by Robert Ludlow Fowler, Esq., and James H. Hickey, Esq.) p. 513, it is said:

"Time is not generally, in equity, deemed to be of the essence of the contract, unless the parties make it so, or it necessarily follows from the nature and circumstances of the contract; but time is of the essence, and a condition of the contract, if the parties choose so to agree originally, or if it be made so by subsequent notice, and the courts will not enforce performance after the time specified."

And in the same work, at page 54, it is stated that time is considered essential, though not made so by the terms of the contract, where change of value or other material circumstances have occurred. In Schmidt v. Reed, 132 N. Y. 108, 113, 30 N. E. 373, the court said:

"While at law the stipulated time of performance of a contract for the sale and conveyance of land is of the essence of the contract, it is not essentially so in equity, and there, when the situation of the parties and property remains unchanged, relief will not necessarily be defeated by delay."

The headnote in the case of Hun v. Bourdon, 57 App. Div. 351, 68 N. Y. Supp. 112, which was brought to compel the specific performance of a contract for the sale of real estate, states that:

"Time is not of the essence of a contract for the sale of real estate unless the agreement contains a clear and express stipulation to that effect. The insertion in the contract of a date for its completion does not make such date of the essence thereof. The court will not assume that time is of the essence of a contract, except where the subject of the sale has a fluctuating value, or where the object of the contract is a commercial enterprise, or the delay in completion would involve one of the parties in a serious loss."

The rule, so far as applicable to the present case, is stated in 26 Am. & Eng. Ency. Law (2d Ed.) pp. 73, 75, 76, as follows:

"It has been laid down as a general rule that time is not generally deemed in equity of the essence of the contract, unless the parties have expressly so treated it, or it follows from the nature and circumstances of the contract. * * * Where the contract is of such a nature that its performance cannot remain in doubt or uncertainty for any period of time without anxiety and detriment to one of the parties thereto, the other party will be held to performance on the day specified, or he will lose his right to specific enforcement. * * * If the thing contracted for is of fluctuating value, time will in general be deemed of the essence of the contract, and a strict compliance required in equity as at law."

In Maupin on Marketable Title to Real Estate (2d Ed.) p. 801, § 310, it is said:

"The rule which allows the vendor to remove objections to the title after the time fixed for completing the contract does not apply where time is of the essence of the contract. Thus, if a man buy a house, to be used by him as a residence, or if he buy property for speculative purposes, or for the purposes of trade or manufacture, or for any other purpose which would be defeated by compelling him to await the vendor's efforts to perfect the title, specific performance by him will not be enforced, if the vendor be unable at the appointed time to convey such a title as the contract requires."

In this case it is undisputed that when the contract in suit was entered into the plaintiff told the defendant that he purchased the lots for the purpose of building. Performance at the specified time was therefore essentially important, and the case comes directly within the exception to the equitable rule that the time appointed for the completion of a contract is not ordinarily of the essence thereof.

The defendant urges that there was an absolute acquiescence in the delay by the plaintiff to complete the contract; but the evidence shows that the latter insisted that time was of the essence of the contract in controversy, and that he rescinded for the breach, and demanded a return of the deposit, when he was informed by the defendant that the latter did not know when the title would be clear. The willingness of the plaintiff to wait a few days or a week, which he says the defendant stated to him on April 28th was necessary to clear the title, did not bind him to wait forever, or place him at the mercy of the defendant in regard to the time when the title should be closed. Both parties knew the plaintiff was buying this property to build on, and therefore was anxious to take title as soon as possible in order to commence operations. The season was advancing, and every day's delay in beginning work entailed loss upon the plaintiff. Under such circumstances the willingness of the plaintiff to wait was a mere indulgence on his part, which he could end at any time he pleased.

If the defendant had relied on this indulgence and acted to his injury some claim of estoppel might be made; but it does not appear that the defendant has been injured in any way by the plaintiff's final refusal to take title. His legal steps to secure title to the various infants' interests had been commenced and partially completed on April 28th. Thereafter he finished them, and sold the property to some third person for at least as much as the plaintiff had contracted to pay. No matter to whom the property was to be sold, these various legal proceedings had to be taken and expenses incidental thereto incurred. The plaintiff was as free to declare the contract at an end on May 21st as he was on April 28th. In no way had he bound himself to give the defendant any definite time to prepare himself to complete his part of the contract. The good faith of the plaintiff, so far as concerns the purpose for which he purchased the lots in suit, is evidenced by his purchase, shortly after his rescission of this contract, of another tract of vacant land in the same locality for building purposes.

After the plaintiff refused to take title, the defendant sold the lots in question to a third person for at least as much as he had contracted to sell them to the plaintiff. Circumstances such as these were taken into consideration in Zirinsky v. Post, 112 App. Div. 74, 98 N. Y. Supp. 132, in determining whether or not there were any equities in favor of either of the parties litigant. The facts in the present case very closely resemble those in the case last cited, where the plaintiff recovered his deposit, and the equities here, as there, are all in favor of the plaintiff. If he should be defeated in this action, he would be the only person to lose in the transaction; and the defendant, on the ground of forfeiture, would be entitled to keep the $500 paid on signing the contract, for which he has given nothing at all.

The plaintiff in his complaint asked for certain equitable relief, namely, that the amount recovered by him in this action be declared a lien on the property, and that it be sold to satisfy such judgment. At the trial it appeared that the record title to the property was never in the defendant. At one time it was in the wife of his office associate; but subsequently to the commencement of this action it was sold to a third person. The plaintiff, in view of these circumstances, now

abandons his claim to equitable relief, and asks for a money judgment only. As the contract was rescinded, there can be no lien; and hence a judgment for the amount paid on the signing of the contract is all that can be given. Davis v. Rosenzweig Realty Co., 192 N. Y. 128, 84 N. E. 943.

The fact that the plaintiff has demanded more than he is entitled to is not important, since an answer was interposed, and section 1207 of the Code of Civil Procedure provides that "the court may permit the plaintiff to take any judgment consistent with the case made by the complaint and embraced within the issue." Davis v. Rosenzweig, 192 N. Y. 135, 84 N. E. 945.

My conclusion is that under the circumstances disclosed the plaintiff is entitled to judgment for $500, with interest, as prayed for in the complaint, and for judgment dismissing the counterclaim. No costs are allowed, for the reason stated in Baumeister v. Demuth, 84 App. Div. 394, 82 N. Y. Supp. 831. The form of the decision and judgment to be entered hereon will be settled upon the usual notice.