[L. A. No. 12186. In Bank.—December 23, 1932.]

H. J. RUESS, Appellant, v. PIERRE F. BARON, Respondent.

Ernest C. Griffith for Appellant.

Robertson & Crawford and J. W. Smith for Respondent.

PRESTON, J.—Action by plaintiff, claiming to be a purchaser from defendant of certain real property owned by the latter and located in Santa Barbara County, for specific performance, with a prayer for damages if such performance be found impossible. Decree in favor of defendant was given by the court below and plaintiff has appealed upon a full record.

On July 2, 1928, defendant signed a writing, the material portions of which are as follows:

"For and in consideration of the sum of One Dollar ($1.00) to me in hand paid by H. J. Ruess, I hereby grant to said H. J. Ruess . . . the sole and exclusive right or option to buy or sell, on or before the 1st day of October, 1928, the following described lands . . . (description). The purchase price of said land to be One Hundred Thousand Dollars . . . , terms not less than twenty per cent (20%) cash at time of transfer, and balance in 1–2–3–4 annual payments equal amounts, interest at 6% per annum payable quarterly, to be secured by a mortgage which shall be a first lien on said lands. . . . Time is of the essence of this agreement.

"Dated at Goleta, Calif., July 2nd, 1928.

"PIERRE F. BARON."

Prior to October 1, 1928, to wit, on September 21, 1928, defendant served a written notice upon plaintiff purporting to rescind and withdraw the so-called option. No consideration was rendered by plaintiff at the time of execution and delivery of the writing and no consideration was thereafter rendered other than alleged expenses incurred and labor performed by plaintiff in endeavoring to secure a purchaser for the property. Following said repudiation by defendant of the writing, and on September 24, 1928, plaintiff purported to exercise the option to purchase the property himself under the terms specified and to that end he tendered the cash payment, together with the notes and mortgage necessary to comply with the writing, if in force at that time. Defendant, however, refused the tender and stood upon his right to rescind.

The whole appeal turns upon the interpretation to be given the document of July 2d above quoted. If it created the relation of vendor and purchaser, as distin-

guished from a naked agency, then clearly it was without consideration and constituted a mere offer which could be withdrawn at any time prior to acceptance. But if it was purely an agency contract to sell, plaintiff's outlay and labor would supply a consideration sufficient to infuse life into the authorization until the full period named therein had expired.

There is somewhat of a suggestion of lack of harmony in our decisions relating to this subject. In the case of *Sill* v. *Ceschi*, 167 Cal. 698 [140 Pac. 949], the court had under consideration an authorization to sell, which reads in part as follows: "I hereby authorize George W. Sill, my agent for the term of thirty days from date hereof . . . to sell and accept money for the sale, at the sum of $15,000.00, or as much less as I may hereafter agree to take, of the following described property. . . . For his services . . . promise to pay him . . . one-half of any amount for which he may sell said property over the price herein asked by me, to-wit: $15,000.00.'' This document was held to be a mere agency agreement and to be supported by a consideration resting solely upon outlays and labor of the agent in finding a purchaser, the court saying (p. 702): "Besides, since the authorization was for thirty days, a revocation within that period would not have been effectual if plaintiff, prior to the attempted cancellation, had expended money and effort in seeking to find a purchaser. (*Blumenthal* v. *Goodall*, 89 Cal. 251 [26 Pac. 906]; *Ropes* v. *John Rosenfeld's Sons*, 145 Cal. 671 [79 Pac. 354].)'' The cases cited in the above quotation and *Los Angeles Traction Co.* v. *Wilshire*, 135 Cal. 654 [67 Pac. 1086], are in a similar category.

But in the case of *Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80 [28 Pac. 796, 797, 27 Am. St. Rep. 167], the court had under consideration an authorization, the provisions of which, so far as here material, read as follows: "We hereby authorize Easton & Eldridge, for us, and within five days from date hereof, and until this authorization is canceled in writing by us, to sell for the sum of $10,000—net dollars—the following described property . . . and we will pay said Easton & Eldridge a commission of all over said sum of $10,000, net, for which they may sell said property with our consent . . . '' In holding that this document created a relationship not of mere agency but of

vendor and purchaser, the court said: "The relation of the defendant to the plaintiffs was not that of a mere agent. While its authority to sell the land was derived from the plaintiffs, yet the sale was to be made for its own account and benefit as well as for that of the plaintiffs. Although the authority to sell was not so coupled with an interest as to create in the defendant an interest in the land, or to prevent the plaintiffs from revoking the authority, yet by the terms of the authorization the defendant acquired such a right to a portion of the proceeds of sale as to enable it to make a contract of sale upon terms of its own choosing. The plaintiffs, in effect, gave to the defendant an option for five days to endeavor to sell the block of land for . . . ten thousand dollars, and agreed . . . that defendant should have whatever sum it could realize therefor above that amount. The relation thus created between them was rather that of a vendor and purchaser under a contract of sale than one of principal and agent, and a sale by the defendant thereunder was in the capacity of a vendor upon its own account, and not for the account of the plaintiffs."

Again, in *Smith* v. *Blodget*, 187 Cal. 235, 240, 241 [201 Pac. 584, 585], the court, in construing a writing authorizing a party to "handle & sell" certain real property "for us at a net price to us of $100.00 per acre", said: "The fact that the agreement conferred the option to 'handle & sell' the property for a certain sum rather than to 'purchase', does not, as defendants contend, necessitate the conclusion that the contract is merely one of agency. Whether an agreement permitting a person 'to sell' land on certain terms creates the relation of principal and agent or that of vendor and purchaser under a contract of sale depends upon the intention of the parties. (James on Law of Option Contracts, sec. 114.) Where there was a revocable authorization to a firm of real estate agents to *sell* land for ten thousand dollars net to the owners, with an agreement to pay 'a commission of all over said sum . . . for which they may sell said property with our consent', it was held . . . that a sale by the firm under this agreement was effected in the capacity of vendor on its own account and not as agent of the owners of the land. (*Robinson* v. *Easton, Eldridge & Co.,* 93 Cal. 80 [28 Pac. 796, 27 Am. St. Rep. 167].) The determining factor in that case was the direct interest in

and right to a part of the proceeds of the sale which was granted to the persons making the sale. The written instrument in the case at bar contains no express provision that plaintiffs shall retain that portion of the purchase price which exceeds the specified selling price. However, Smith, Jr., is given the right to sell 'at a net price to us (the owners) of $10,000 per acre'. Had the contract stated that Smith was authorized to sell the property *for not less* than one hundred dollars per acre net to the owners, it might be held that the provision was purely one of limitation and that the intent was fairly clear that the person bringing about the sale should have no interest in the proceeds as such. (*Allen* v. *Clopton,* [Tex. Civ. App.] 135 S. W. 242.) But the broad and unrestricted provision giving Smith the right to effect a sale at a net price to the owners of one hundred dollars per acre is susceptible of sundry interpretations. It may mean that all net proceeds above the specified price belong to him, the owners of the property agreeing to part with all interest in the property, whatever the price may be, provided they receive the sum of one hundred dollars per acre free from all deductions, in which case Smith would be in the position of a vendor selling on his account; it may mean that the owners of the property are entitled to receive all of the net proceeds of the sale and that Smith cannot look to them for any compensation for services unless he obtains for them a net price in excess of one hundred dollars per acre, and in that case he would be a mere agent. . . . The provisions of the contract are not clear in this respect—the intention of the parties is imperfectly expressed and the language employed by them is ambiguous and requires interpretation. It was, therefore, permissible for the court to take into consideration the construction placed upon the instrument by the various persons concerned. . . . Taking into consideration the dealings previously set forth, the various assignments of the option and the manner in which the sale was conducted . . . the evidence must be held sufficient to support the finding of the trial court 'that the said instrument was acted upon and construed by the grantors thereof and all the parties to this action as an option and not as a mere agency authorization'."

Again, in the case of *Tufts* v. *Mann,* 116 Cal. App. 170 [2 Pac. (2d) 500], the court quotes approvingly the language above quoted from the case of *Robinson* v. *Easton, Eldridge & Co., supra,* and holds that a party exercising an option which specified that the owner should receive $50,000 net for his property, was not acting as a real estate broker but as a principal and was therefore not required to possess a broker's license.

We think the line of cases last mentioned are controlling here and that the writing here in question was much more than a mere agency agreement and we are not privileged to interfere with the court's decree to this effect. The price of defendant's property, whether purchased by plaintiff or by another, was to be a net price to defendant. Plaintiff's profit or compensation, if any, was to be what he could sell the property for over and above that amount; whether he sold it for much or little above that amount would avail the owner nothing. Plaintiff testified that he was to receive all sums in excess of the price named as a profit and that he was quoting the property at $125,000. Efforts to sell to others, in view of this relationship, would not be a consideration for the option to purchase. ■ As intimated in *Smith* v. *Blodget, supra,* the provision that the price should be net to the owner, no more and no less, was sufficient to authorize the court to decree that the relation of vendor and purchaser was thereby created.

This makes applicable the clear doctrine stated by the court in the case of *Brown* v. *San Francisco Savings Union,* 134 Cal. 448 [66 Pac. 592], the syllabus of which reads as follows: "An option given to a real estate agent proposing to sell lands, but wishing himself to purchase the same, to buy within a time limited, upon certain terms and conditions, of which no notice of acceptance was given, and for which no consideration was paid, and which he is free to exercise or not, is a mere *nudum pactum,* and amounts only to a continuing proposal which may be withdrawn by the party making it before such notice of acceptance is communicated; and after notice of such withdrawal the option cannot be exercised." This doctrine has been reannounced in numerous later cases.

■ Again, if this document be treated as containing a dual offer, one an option and the other an agency, we

see no reason why the two provisions may not rest upon different foundations. It is clear that the option to purchase provision may be segregated from the other provision. (*Mott* v. *Cline*, 200 Cal. 434 [253 Pac. 718].) Upon this aspect of the case, *Jolliffe* v. *Steele*, 9 Cal. App. 212, 215 [98 Pac. 544, 545], seems to be in point, the court there having used the following language: "Moreover, in our opinion, the express covenant on the part of an agent authorized to sell real estate that he will endeavor to sell it at a fixed net price to the owner is not a sufficient consideration for the grant of an option to such agent to purchase within a given time at such fixed price. Such contract is a mere proposal to sell, unsupported by sufficient consideration, and subject to revocation by the owner at any time before the negotiation of a sale or the exercise of such option by the agent to purchase."

We see no room here for the operation of the principle that if A gives value for two or more promises from B, B cannot claim that one of such promises was not supported by consideration, though the parties have not apportioned the consideration to the separate promises. The difficulty here is that at the time of the execution and delivery of the document in question, no consideration whatever was given. The only consideration contended for is labor and expenses touching the proposition of an agency, thereby creating an estoppel in favor of plaintiff against defendant as to that particular provision, without bearing any relation to the option provision. Moreover, under no aspect of the case would plaintiff be entitled to specific performance.

The judgment is affirmed.

Shenk, J., Seawell, J., Tyler, J., *pro tem.*, Langdon, J., and Waste, C. J., concurred.